# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

JAMES O. RIGGS, JR., )
 )
    Plaintiff, )
 )
  v. ) No. 4:10-CV-793 CAS
 )
CITY OF OWENSVILLE, et al., )
 )
    Defendants. )

## MEMORANDUM AND ORDER

This matter under 42 U.S.C. §§ 1983 and 1985(3) is before the Court on remaining defendant Ronald Lang's Motion for Summary Judgment and plaintiff's Motion to Strike Affidavits of Ronald Lang, Jr. and Shannon Lang.[1] Both motions are fully briefed. For the following reasons, the Court will deny plaintiff's motion to strike and grant in part and deny in part defendant's motion for summary judgment.

**Factual Background**

The Court accepts the following facts as true for purposes of summary judgment, resolving all factual conflicts in plaintiff's favor. Plaintiff leased a shop premises from a corporation owned by defendant Lang. Plaintiff claims that he paid his rent on time, and promptly paid Lang in cash on the occasions when he wrote a check with insufficient funds to cover it. Lang asserted that plaintiff had failed to pay his rent, and gave plaintiff written notice on May 1, 2006 that his lease would be terminated and all property should be removed from the premises by June 1, 2006. Plaintiff did not vacate the premises by that date. On June 21, 2006, Lang posted a Notice on the

---

[1]Plaintiff settled his claims against the other defendants in this case, the City of Owensville, Missouri, its Chief of Police, and four police officers (collectively referred to as the "police defendants").

premises door, citing Section 441.065, Revised Statutes of Missouri, titled "Abandonment of Premises, Disposition of Remaining Property," which advised plaintiff he had ten days to remove his possessions from the premises, or they would be deemed abandoned. Plaintiff spoke to Lang on June 30, 2006 and told Lang he would be out of the premises by Sunday, July 2, 2006, and Lang responded, "OK."

Despite this apparent agreement, defendant Lang went to the Owensville Police Department shortly before midnight on June 30, 2006 to inform the police he was going to re-enter the premises, and asked if an officer could be present to keep the peace in case plaintiff appeared. At that time, ten days had not passed since Lang posted the Notice on the premises door. Two or three Owensville police officers accompanied Lang to the premises, and Lang entered shortly after midnight along with one of his employees and two men from a towing company, Triple L Towing. Lang videotaped at least a portion of the contents of the premises, and then began removing the contents and placing them in a covered car trailer belonging to plaintiff that was parked outside. The police officers did not assist in opening the doors to the premises or in removing the contents of the premises, except as stated herein.

At one point, plaintiff came across some items he believed might be "illegal," and asked a police officer to enter the premises to examine these items. The officer inspected the items and called the Owensville Fire Department Haz-Mat team to assist in the removal of the items. After the potentially hazardous items were removed, Lang continued to remove plaintiff's property from the premises.

There were several vehicles and trailers in the shop, none of which could be driven because there were no keys. Lang planned to tow the vehicles and had requested that the towing company be present for that purpose, but the towing company would not make any tows without a "tow

sheet," or authorization, which had to be signed by the police. Lang knew that the towing company would not make a tow without police authorization. The police officers signed five Missouri Department of Revenue Motor Vehicle Bureau forms, titled "Crime Inquiry and Inspection Report/Authorization to Tow," for the three vehicles and two trailers located in the premises. Under the heading "Reason for Vehicle Removal" on each form, a box was checked that stated, "Abandoned, on real property 48+ hours (304.157)."[2] The vehicles and trailers were then towed away by Triple L Towing as requested by Lang. Lang later sold plaintiff's property that he took from the premises for approximately $12,000. Plaintiff claims the property was worth over $400,000.

**Motion to Strike**

As a threshold matter, plaintiff moves to strike the affidavits of defendant Lang and his wife, Shannon Lang, filed in support of Lang's motion for summary judgment, on the basis that the affidavits do not state that they were made on personal knowledge. In support, plaintiff cites Rule

---

[2]The parenthetical notation 304.157 on the Tow Authorization forms refers to § 304.157, Missouri Revised Statutes, titled "Vehicles left unattended or improperly parked on private property of another, procedure for removal and disposition--violation of certain required procedure, penalty." This statute states in pertinent part:

> 1. If a person abandons property, as defined in section 304.001, on any real property owned by another without the consent of the owner or person in possession of the property, at the request of the person in possession of the real property, any member of the state highway patrol, state water patrol, sheriff, or other law enforcement officer within his jurisdiction may authorize a towing company to remove such abandoned property from the property in the following circumstances:
>
> (1) The abandoned property is left unattended for more than forty-eight hours; or
>
> (2) In the judgment of a law enforcement officer, the abandoned property constitutes a safety hazard or unreasonably interferes with the use of the real property by the person in possession.

3

56(c)(4), Fed. R. Civ. P., and cases holding that affidavits in support of summary judgment must be made on personal knowledge and affidavits based on information and belief are insufficient. Plaintiff does not identify any particular averment in either affidavit as deficient.

Defendant responds that while affidavits in support of a motion for summary judgment must be made on personal knowledge, Rule 56(c)(4) does not state that an affidavit must contain a "pro forma recitation that the fact contained therein are based upon personal knowledge," and that the personal knowledge of the affiant may be inferred from the context of the affidavit. Def.'s Opp. at 2. Defendant asserts that even a cursory review of the affidavits at issue reveals they were made on personal knowledge, observations and experience, as each affidavit recites actions personally taken by either defendant or Shannon Lang. Finally, defendant states that the Langs have provided supplemental affidavits which confirm that their prior affidavits were made based on personal knowledge.

Although Rule 56 requires an affidavit to be made on personal knowledge, "it does not mandate that the affidavit *state* that it is made on personal knowledge." 11 James Wm. Moore, et al., Moore's Federal Practice, § 56.14[1][c] (3d ed. 2010). The Eighth Circuit has stated, "In some instances, courts will infer personal knowledge from the content or context of a statement in an affidavit," where the content and context support an inference that it reflects the affiant's personal knowledge. Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1111-12 (8th Cir. 2005). This Court has refused to reject an affidavit on the basis that it did not explicitly state it was made on personal knowledge, where the content and context of the affidavit indicated it was made on personal knowledge. See McDonnell Douglas Corp. v. Islamic Republic of Iran, 591 F. Supp. 293, 306-07 (E.D. Mo. 1984), aff'd, 758 F.2d 341 (1985); see also Estate of Butler ex rel. Butler v. Maharishi Univ. of Mgmt., 589 F.Supp.2d 1150, 11 (S.D. Iowa 2008) (refusing to strike affidavit where affiant

4

identified himself as a student at defendant university for a specified time period, stated that he knew certain individuals, and described his personal experiences on the campus; these statements were clearly based on affiant's personal knowledge and demonstrated his competence to testify to the relevant matters). Conversely, the mere fact that an affidavit states it was made on personal knowledge does not make it admissible, 11 Moore's Federal Practice, § 56.14[1][c], because "[a]ffidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." El Deeb v. University of Minn., 60 F.3d 423, 428 (8th Cir. 1995).

In this case, the contents and contexts of defendant and Shannon Lang's affidavits establish that the affidavits are based on personal knowledge, as each describes actions that the affiants either personally engaged in or observed. The Court will therefore deny the motion to strike and will consider the affidavits in connection with defendant's motion for summary judgment.

**Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing

there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

**Discussion**

**A. Section 1983 Claim**.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008) (quoting West). To meet the second element in this case, plaintiff must show that defendant Lang, a private individual, "acted .together with or has obtained significant aid from state officials"

or engaged in conduct that is "otherwise chargeable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937

Lang moves for summary judgment on plaintiff's § 1983 claim on the basis that Lang was not a state actor and therefore cannot be liable to plaintiff under § 1983. Lang relies primarily on a Ninth Circuit case, Howerton v. Gabica, 708 F.2d 380, 382 (9th Cir. 1983), to support his contention that the "minimal involvement" of the police defendants in this case does not, as a matter of law, rise to the level of transforming Lang's conduct into state action.

The Supreme Court has stated, "It is well settled that a private party may be held liable on a § 1983 claim if "he is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). The Eighth Circuit has instructed that to be considered a state actor for purposes of liability under § 1983, a private party must have "reached an understanding" with state officials to deny civil rights and have been a "willful participant in joint activity with the State." Steele v. City of Bemidji, 257 F.3d 902, 906 (8th Cir. 2001) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). To survive a motion to dismiss "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) (cited cases omitted). "In order to survive a motion for summary judgment or for a directed verdict, evidence must be produced from which reasonable jurors could conclude that such an agreement was come to." Id.

In the context of police officer involvement with a private party's repossession of property, the circuit courts of appeal "are in agreement as to the law: officers are not state actors during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." Marcus v. McCollum, 394 F.3d 813, 818 (10th Cir. 2004). "When

7

an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action." Barrett v. Harwood, 189 F.3d 297, 302 (2d Cir. 1999). See also Cofield v. Randolph County Comm'n, 90 F.3d 468, 471 (11th Cir. 1996) ("state action might be present if an officer were to facilitate a repossession"); Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981) ("police intervention and aid in the repossession does constitute state action"); United States v. Coleman, 628 F.2d 961, 964 & n.1 (6th Cir. 1980) (police compulsion, encouragement, direction, assistance, or affirmative participation would constitute state action); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 513 (5th Cir. 1980) ("police intervention and aid in this repossession . . . would constitute state action").

Whether or not police involvement in a private party's repossession will constitute state action "is particularly fact-sensitive, so the circumstances must be 'examined in their totality.'" Marcus, 394 F.3d at 819 (quoting Howerton, 708 F.2d at 384). "The controlling question to be resolved by a factfinder is whether the officers were simply keeping the peace, as they were entitled to do, or aiding [defendant], as they were not." Id. at 822. In Barrett, the Second Circuit analyzed a number of cases addressing whether or not police involvement in a repossession rose to the level of state action, illustrating that the facts of the case are crucial to the determination:

> In the relevant case law, we discern a spectrum of police involvement at the scene of a repossession. At one end of the spectrum is *de minimis* police involvement not amounting to state action in aid of the repossession. For example, a police officer's mere presence at the scene is insufficient to constitute state action. See Wright v. National Bank, 600 F. Supp. 1289, 1295 (N.D.N.Y.), aff'd, 767 F.2d 909 (2d Cir. 1985); see also United States v. Coleman, 628 F.2d 961, 963-64 (6th Cir. 1980) (no state action where police parked around corner from scene of repossession and were simply standing by in case of trouble).

8

> Further along the spectrum we find involvement greater than mere presence, yet still insufficient to constitute state action in aid of the repossession. Falling into this category is the Fifth Circuit's decision in Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 510-12 (5th Cir. 1980); see also id. at 513-15 (Garza, J., dissenting) (giving a "more complete recital of the facts"). In Menchaca, the repossessors summoned police officers after the debtor, Menchaca, resisted their attempts to take his car. Upon arrival at the scene, an officer informed the debtor that "repossession was a civil matter and that the only reason the police where there was to quiet a reported disturbance." Id. at 510. The debtor alleged, but all the officers denied, that one officer also said she was going to arrest the debtor if he didn't give the repossessors the keys. See id. at 511-12. Even though such action by the officers went beyond mere presence, the Fifth Circuit ruled it did not constitute state action vis-à-vis the repossession. See id. at 513.
>
> When an officer begins to take a more active hand in the repossession, and as such involvement becomes increasingly critical, a point may be reached at which police assistance at the scene of a private repossession may cause the repossession to take on the character of state action. Hence, several circuits addressing this issue, when a police officer was involved either in a repossession or in similar activities, have found state action or ruled that the issue at least survived a motion for summary judgment. See, e.g., Soldal v. County of Cook, 942 F.2d 1073, 1075 (7th Cir. 1991) (en banc), rev'd on other grounds, 506 U.S. 56 (1992) (state action issue survives summary judgment when police presence at trailer removal and eviction of occupants prevented plaintiff from resisting eviction); Jones v. Gutschenritter, 909 F.2d 1208, 1210-13 (8th Cir. 1990) (state action issue survives summary judgment where debtor saw uniformed, armed officer standing with individual disconnecting electricity and officer did not depart before disconnection complete); Harris v. City of Roseburg, 664 F.2d 1121, 1127 (9th Cir. 1981) (state action where plaintiff yelled at repossessor to get away from his truck; officer then ordered plaintiff to stand back or get away, and told plaintiff that officer was there to stand by, and that further interference would result in arrest); Booker v. City of Atlanta, 776 F.2d 272, 274 (11th Cir. 1985) (state action issue survives summary judgment where police officer arrived with repossessor, giving the repossession "a cachet of legality" and intimidating debtor into not exercising his right to resist)."

189 F.3d at 302 (parallel citations omitted).³

---

³Some of the cases discussed in Barrett address whether police officers' actions while acting together with private individuals constitute state action, while others address the converse, whether private individuals' actions while acting together with police officers constitutes state action. The relevant analysis appears to be the same, whether the defendant in question is a police officer or a private individual.

In the instant case, plaintiff was not present at the shop premises when the entry and seizure occurred and therefore could not have been intimated by the officers' conduct, in contrast to the vast majority of reported decisions. While plaintiff's absence from the scene may be a very significant factor in the state action analysis, see, e.g., Vakkas v. Tyson Associates, 2000 WL 325916, at *8 (E.D. Pa. Mar. 28, 2000), it must be balanced with the principle that "police intervention and aid in the repossession does constitute state action." Harris, 664 F.2d at 1127. Police "cross the line if they affirmatively intervene to aid the repossessor," Marcus, 394 F.3d at 818, and a repossession may take on the character of state action as officers "take a more active hand in the repossession, and as such involvement becomes increasingly critical[.]" Barrett, 189 F.3d at 302.

The summary judgment record shows that (1) Lang knew the towing company he brought to the premises would not remove plaintiff's vehicles without tow authorizations signed by the police, (2) Lang requested the police officers to come to the premises, (3) the officers came to the premises and signed five tow authorizations which stated that the vehicles were abandoned within the meaning of § 304.157, Mo. Rev. Stat., and (4) the authorizations enabled Lang to have plaintiff's vehicles towed away. Lang has not cited and the Court in independent research has not found any factually comparable cases, where the plaintiff was not present at the repossession but the officers took action to aid the repossession beyond merely keeping the peace. The Court finds that plaintiff has made a sufficient showing to survive summary judgment, as a reasonable jury could find a "meeting of the minds" existed between defendant Lang and the Owensville police officers, and that the police aided Lang's seizure of the vehicles and trailers located in the premises. Lang's motion for summary judgment on plaintiff's § 1983 claim should therefore be denied.

**B. § 1983 Conspiracy Claim**.

In order to prevail on a claim of § 1983 conspiracy, a plaintiff must show "(1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (internal citations omitted).

Lang moves for summary judgment on plaintiff's § 1983 conspiracy claim, asserting that plaintiff cannot establish Lang intended to violate his civil rights as required by the Supreme Court in Adickes, 398 U.S. at 152. Lang contends there is no evidence he intended to purposely and knowingly deprive plaintiff of his federally-protected rights, because the evidence shows he relied in good faith on his attorney's advice at every stage of the process to evict plaintiff from the premises, and informed the police of his actions. Lang also states that plaintiff admitted in his deposition he did not believe Lang removed plaintiff's property at the behest of the police, and that Lang had no ulterior motive in removing plaintiff's property other than wanting to get the premises back so he could re-rent it.

In the amended complaint, plaintiff alleges a meeting of the minds between defendant Lang and the Owensville police officers to act together to enter the premises without a warrant with the unlawful objective of seizing plaintiff's personal property without due process of law and in violation of plaintiff's Fourth, Fifth, Ninth and Fourteenth Amendment rights. In response to the summary judgment motion, however, plaintiff does not appear to understand that Lang is attacking his §1983 conspiracy claim, not the § 1983 claim. Plaintiff responds only that Lang can be held liable under § 1983 even if he did not have a specific intent to violate plaintiff's civil rights, or an

agreement with the police to violate plaintiff's civil rights, as Lang's specific intent to violate his civil rights it is not an essential element of his claim. Pl.'s Opp. at 9-10.

The first element of a § 1983 conspiracy claim is that the defendant conspired with others to deprive the plaintiff of a constitutional right. White, 519 F.3d at 814. The Eighth Circuit has cited the following authorities further articulating and explaining this requirement:

> Fonda v. Gray, 707 F.2d 435, 438-39 (9th Cir. 1983) ("To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' *to violate constitutional rights* must be shown," and § 1983 claim failed where plaintiff "did not produce evidence of the existence of a 'meeting of the minds' between the banks and the FBI *to knowingly attempt to accomplish an alleged wrongful purpose*, a necessary element of her conspiracy claim.") (emphasis added); Kevin F. O'Malley, et al., Federal Jury Practice and Instructions § 167.31 (5th ed. 2001) (providing that in claim of conspiracy to interfere with civil rights, "it must be shown by a preponderance of the evidence that the conspiracy was knowingly formed, and that the defendant who is claimed to have been a member knowingly participated in the unlawful plan *with the intent to advance or further some object or purpose of the conspiracy*") (emphasis added); cf. Norton v. Liddel, 620 F.2d 1375, 1379 (10th Cir.1980) ("[W]here a private individual actively conspires with an immune State official (acting under color of law) with the intent to purposely and knowingly deprive an individual of his rights secured under the Constitution and laws of the United States, the fact that the State official is immune from suit in damages should not provide a windfall defense to the private conspirator.") (emphasis added).

Dossett v. First State Bank, 399 F.3d 940, 952 n.2 (8th Cir. 2005). See also Martin A. Schwartz, Section 1983 Litigation: Claims and Defenses, § 5.16[A] (4th ed. 2004) ("A [1983] conspiracy requires an agreement or meeting of the minds to violate federally protected rights.")

Based on the foregoing, plaintiff's assertion that he does not need to show Lang intended to violate his constitutional rights in order to prevail is obviously incorrect with respect to his § 1983 conspiracy claim. "In order to defeat a motion for summary judgment, [plaintiff] must offer evidence sufficient to support the conclusion that the defendants 'directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide facts which would

establish a 'meeting of the minds.'" DuBose v. Kelly, 187 F.3d 999, 1003 (8th Cir. 1999) (quoted case omitted). Here, plaintiff does not cite any facts or refer to any evidence in the record, circumstantial or otherwise, to show that Lang formed an agreement or "meeting of the minds" with the intent to violate plaintiff's constitutional rights. Nor does plaintiff dispute or offer any commentary on his deposition testimony that he did not believe Lang had an ulterior motive behind his actions other than retaking possession of the premises so that it could be re-rented.

Despite plaintiff's wholly inadequate response to Lang's summary judgment motion on the § 1983 conspiracy claim, the Court finds that the fact issues discussed above which preclude summary judgment on plaintiff's § 1983 claim also preclude summary judgment on his § 1983 conspiracy claim. As a result, Lang's motion for summary judgment on plaintiff's § 1983 conspiracy claim should be denied.

**C. Section 1985(3) Claim**.

Lang did not address plaintiff's 42 U.S.C. § 1985(3) conspiracy claim in his motion for summary judgment. After plaintiff pointed this out in his opposition, Lang moved for summary judgment on plaintiff's § 1985(3) in his reply memorandum. Lang asserts that summary judgment is appropriate on plaintiff's § 1985(3) conspiracy claim for the same reason as his § 1983 conspiracy claim, i.e., that plaintiff failed to show the defendants reached an understanding or had a meeting of the minds to violate plaintiff's constitutional rights.

Lang may not move for summary judgment on a claim for the first time in his reply memorandum, as this fails to give the plaintiff an opportunity to respond. Cf. Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 421 n.5 (8th Cir. 2005). Moreover, the Court has denied summary judgment on plaintiff's § 1983 conspiracy claim, and therefore Lang's basis for this aspect of his summary judgment motion is without merit.

Nonetheless, plaintiff's § 1985(3) conspiracy claim fails to state a claim upon which relief can be granted as a matter of law, and as a result summary judgment is proper on the Court's own motion. See Enowmbitang v. Seagate Technology, Inc., 148 F.3d 970, 973 (8th Cir. 1998) ("A district court may properly grant summary judgment sua sponte and without prior notice 'if the losing party has failed to state a claim upon which relief may be granted.'") (quoted case omitted).

The Supreme Court has held that "in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, inter alia, . . . that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action[.]'" Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Consequently, the Eighth Circuit has approved the dismissal of § 1985(3) conspiracy claims where there is no allegation of racial or other class-based discriminatory animus. See, e.g., Williams-Bey v. Kempker, 192 F. App'x 569, 571 (8th Cir. 2006); Dornheim v. Sholes, 430 F.3d 919, 924-25 (8th Cir. 2005); Federer v. Gephardt, 363 F.3d 754, 758, 759 (8th Cir. 2004).

Plaintiff's complaint does not assert the required elements for a claim under § 1985(3) because it does not include any allegation that a racial or class-based discriminatory animus lay behind the alleged private conspiracy. As a result, judgment should be entered against plaintiff on his § 1985(3) conspiracy claim.

**D. Punitive Damages**.

Finally, Lang moves for summary judgment on plaintiff's claim against him for punitive damages. Lang states that before plaintiff may submit a claim for punitive damages to a jury, he must make an adequate threshold showing that a "'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Swipies v. Kofka, 419 F.3d 709, 718 (8th Cir. 2005) (quoting Smith

14

v. Wade, 461 U.S. 30, 56 (1983)). Lang states that the reckless indifference standard is subjective and "requires evidence that the defendant acted 'in the face of a perceived risk that his or her actions would violate federal law.'" Swipies, id. (quoting Kolstad v. American Dental Ass'n, 527 U.S. 526, 536 (1999) (internal brackets omitted)). Lang states that even evidence he knew he was violating state law is irrelevant, as a plaintiff must show the defendant knew his actions might violate a federal law or right before punitive damages may be assessed, citing Swipies, 419 F.3d at 718.

Lang asserts he is entitled to judgment on the punitive damages claim because is no evidence he knew he was violating plaintiff's federal or constitutional rights, as is required for the imposition of punitive damages. Lang asserts that the evidence shows he relied on the advice of his attorney in posting the Notice, re-entering the premises, and disposing of the items left by plaintiff, and that "the only basis for this entire case is the fact that Defendant misinterpreted or misapplied Mo. Rev. Stat. § 441.065." Mem. Supp. Mot. Summ. J. at 20. Lang contends that the uncontroverted evidence shows he did everything within his power to act in accordance with state and federal law, and that even if he knew he was violating state law, this would be insufficient to defeat summary judgment on the punitive damages claim, citing Swipies, 419 F.3d at 718.

Plaintiff responds that he can assert a claim for punitive damages under Swipies if he shows that Lang's conduct was motivated by evil motive or intent. Plaintiff asserts that there is a genuine issue of material fact concerning Lang's evil motive or intent based on the following facts: Plaintiff was never behind on his rent, and Lang knew he had no right to enter the premises and take plaintiff's property, as Lang admits plaintiff had not vacated the premises, he knew plaintiff intended to return and had not abandoned the personal property that was in the premises, and as a result he knew he was not entitled to the remedy available to landlords under § 441.065, Mo. Rev. Stat. Further, plaintiff told Lang on June 30, 2006 that he would be out of the premises by July 2, 2006,

15

and Lang responded, "OK," but then Lang entered the premises late that night and took plaintiff's property with police assistance before plaintiff had a chance to remove it. Plaintiff also states that Lang failed to afford plaintiff the full ten-day cure provision to which he was entitled under § 441.065 when he entered the property on June 30, 2006.

Punitive damages may be awarded under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith, 461 U.S. at 56. Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future. Id. at 54; City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981). It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others. Coleman v. Rahija, 114 F.3d 778, 787 (8th Cir. 1997).

Thus, punitive damages may be submitted to a jury in an action under § 1983 on two separate grounds: (1) where a defendant's conduct involves reckless or callous indifference to the federally-protected rights of others; or (2) where a defendant's conduct is shown to be motivated by an evil motive or intent. See Schaub v. VonWald, __ F.3d __, 2011 WL 1545455, at *13 (8th Cir. Apr. 26, 2011) (quoting Smith, 461 U.S. at 56). A plaintiff may seek punitive damages if he establishes facts relating to either ground. See, e.g., Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1397 (8th Cir. 1997) (punitive damages award proper where trial court found evidence of malicious or evil intent in correctional officer's beating of inmate).

Lang's summary judgment argument is based solely on the claimed absence of one potential ground for the imposition of punitive damages, reckless indifference to federally protected rights, and ignores a second potential ground, evil motive or intent. Setting aside the issue of whether

16

plaintiff could show reckless indifference to his federally protected rights, the Court finds that plaintiff has shown sufficient evidence of evil motive or intent on Lang's part to avoid summary judgment. This aspect of Lang's motion should therefore be denied. Whether the Court will permit plaintiff to submit a punitive damage instruction to the jury will depend upon the evidence presented at trial.

**Conclusion**

For the foregoing reasons, plaintiff's motion to strike the affidavits of defendant Lang and Shannon Lang should be denied. Defendant Lang's motion for summary judgment should be denied as to plaintiff's claims under 42 U.S.C. § 1983 and for punitive damages, and granted as to plaintiff's conspiracy claim under 42 U.S.C. § 1985(3).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion to Strike Affidavits of Ronald Lang, Jr. and Shannon Lang is **DENIED**. [Doc. 61]

**IT IS FURTHER ORDERED** that defendant Ronald Lang's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to plaintiff's conspiracy claim under 42 U.S.C. § 1985(3), and **DENIED** in all other respects. [Doc. 53]

An appropriate partial judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  4th  day of May, 2011.